UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID C. LETTIERI,

        Plaintiff,

    v.                                        23-CV-925-LJV
                                              ORDER
KIMBERLIE REYNOLDS,

        Defendant.

---

The *pro se* plaintiff, David C. Lettieri, is a prisoner confined at the Northeast Ohio Correctional Facility.[1] On June 14, 2023, he was found guilty by a jury of one count of enticement of a minor in violation of 18 U.S.C. § 2422(b), *United States v. Lettieri*, Case No. 21-cr-20, Docket Items 146, 150 (W.D.N.Y. June 14, 2023), but he has not yet been sentenced because his post-trial motion for acquittal and a new trial was only recently decided, *see id.*, Docket Item 157 (W.D.N.Y. July 16, 2023); *id.*, Docket Item 168 (W.D.N.Y. Oct. 6, 2023).

Lettieri asserts claims under 42 U.S.C. § 1983 and alleges that during his pretrial detention at the Allegany County Jail (the "Jail"), the defendant, Kimberlie Reynolds, "lock[ed him] in for 24 hours [without a] hearing." Docket Item 1 at 4. He also has moved to proceed *in forma pauperis* ("IFP"), Docket Item 2, and for an "[immediate] trial," Docket Item 3.

---

[1] Since November 2022, Lettieri has filed more than 50 civil actions and petitions in this Court. The Court recently found that Lettieri "has engaged in a pattern of abuse of the judicial process" and cautioned Lettieri that if he continues to abuse the judicial process, he will be sanctioned. *In re: David C. Lettieri*, Case No. 23-mc-32, Docket Item 1 (W.D.N.Y. Sept. 5, 2023). Sanctions may include, but are not limited to, a prohibition against filing future cases in this Court, dismissal of pending cases, and monetary fines.

Because Lettieri meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization and certification, Docket Item 2, the Court grants his motion to proceed IFP. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint. For the reasons that follow, Lettieri's complaint is dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted. And because Lettieri's complaint is dismissed, his motion for an immediate trial is denied as moot.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639; *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,*

2

171 F.3d 794, 795 (2d Cir. 1999))).  But leave to amend pleadings may be denied when any amendment would be "futile."  *Cuoco*, 222 F.3d at 112*.*

I.      **SCREENING THE COMPLAINT**

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim.  *See id.* (concluding that district court properly dismissed *pro se* complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*).  And even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Lettieri's complaint contains few details. He alleges only that during his pretrial detention at the Jail, the defendant, Kimberlie Reynolds, "lock[ed him] in for 24 hours [without a] hearing."[2] Docket Item 1 at 4. He says that three other defendants—Michael J. Murphy, Brian Learn, and Kyle Dyzlowzi—were involved in the events giving rise to his claims, *id.* at 5, but he does not include them as defendants or explain their involvement. Lettieri lists "due process, cruel and unusual punishment, unlawful search and seizure, [and] excessive force" as the bases of his claims. *Id.* at 3.

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983

---

[2] Lettieri previously filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 that seemingly was based on the same incident. *Lettieri v. Reynolds*, Case No. 23-cv-46, Docket Item 1 (W.D.N.Y. Jan. 19, 2023). The Court takes judicial notice of that filing. *See Yencho v. Chase Home Fin. LLC*, 2015 WL 127721, at *1 n.1 (S.D.N.Y. Jan. 8, 2015) (explaining that a court may take judicial notice of filings in other lawsuits); *Johnson v. Levy*, 812 F. Supp. 2d 167, 176-77 (E.D.N.Y. 2011) ("[W]hen courts take judicial notice of documents filed in other courts [or cases], it is 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))). In his petition in that case, Lettieri alleged that Reynolds issued a misbehavior report charging him with violating inmate rules regarding use of the law library and then locked him in his cell for 24 hours without a hearing, without the opportunity to confront witnesses, and without any evidence presented against him. *Lettieri v. Reynolds*, Case No. 23-cv-46, Docket Item 1. The petition was dismissed because (1) Lettieri was no longer "in custody" in connection with his alleged due process claim as required to prevail on his habeas petition, and (2) even if Lettieri were "in custody" when he filed the petition, his claim was moot. *Id.*, Docket Item 9 at 2-6.

4

itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  It is not enough to assert that the defendant is a "link[] in the prison['s] chain of command." *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a section 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d at 618.

### A.  Due Process Claims

Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979).  So when analyzing a pretrial detainee's claim of unconstitutional conditions of confinement, a court considers "whether the conditions amount to 'punishment' without due process in violation of the Fourteenth Amendment."[3]  *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981) (citing *Bell*, 441 U.S. at 535); *see also*

---

[3] Due process claims brought by pretrial detainees are not governed by the familiar "atypical and significant hardship" test that applies to convicted prisoners.  *See, e.g.*, *Benjamin v. Fraser*, 264 F.3d 175, 188-89 (2d Cir. 2001) (holding that *Sandin v. Conner*, 515 U.S. 472 (1995), does not apply to pretrial detainees); *see also Sandin*, 515 U.S. at 484-85 (distinguishing the due process rights of pretrial detainees from those of convicted prisoners).

*LaRock v. Amato*, 2013 WL 5466410, at *14 (N.D.N.Y. Sept. 30, 2013) ("[C]onfinement [of a pretrial detainee] which is deemed punitive . . . indicates a liberty interest requiring procedural due process protections.").

To evaluate whether a restriction is punitive, the court asks "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538.  Three factors impact that analysis: (1) whether there is "a showing of an expressed intent to punish on the part of the detention facility officials"; (2) whether the restriction can be attributed to an "alternative purpose," i.e., a purpose other than punishment; and (3) whether the restriction "appears excessive in relation to the alternative purpose assigned to it." *Id.* (alterations and citations omitted).

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of a governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539; *see, e.g.*, *Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (reiterating standard set forth in *Bell* for assessing whether "restrictions on pretrial detainees comport with substantive due process").

Lettieri alleges only that he was locked in his cell for 24 hours without a hearing. Docket Item 1 at 4.  Absent any other details, that single allegation does not enable the Court to evaluate whether Lettieri was locked in his cell as punishment or for a legitimate "alternative purpose."  *See Bell*, 441 U.S. at 538-39; *see also El-Shabazz v. Wangenstein*, 1995 WL 489686, at *5 (S.D.N.Y. Aug. 15, 1995) (noting that administrative segregation may be "a reasonable response to concerns for institutional

6

order and security" and denying pretrial detainee leave to amend his due process claim because his administrative segregation pending a hearing was not punishment); N.Y. Comp. Codes R. & Regs. tit. 9, § 7006.7(a) ("An incarcerated individual who threatens the safety, security, and good order of the facility may be immediately confined in a cell . . . pending a disciplinary hearing . . .").

In the absence of any plausible allegations suggesting that being locked in his cell for 24 hours was punitive, Lettieri fails to state a due process claim upon which relief can be granted.  That claim therefore is dismissed.

### B. Cruel and Unusual Punishment, Excessive Force, and Unlawful Search and Seizure Claims

While the complaint summarily lists due process, cruel and unusual punishment, unlawful search and seizure, and use of excessive force as the bases of Lettieri's claims, the only claim the limited facts arguably support is—as addressed above—a violation of due process.  All other claims are dismissed because they fail to state claims upon which relief can be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

First, Lettieri's Eighth Amendment claims for cruel and unusual punishment and excessive force are not cognizable because the Eighth Amendment applies only to convicted prisoners and Lettieri was a pretrial detainee at the time of the incident at issue.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Second, to the extent those claims are construed as arising under the Fourteenth Amendment's Due Process Clause, *see id.* ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment . . ."), they fail because Lettieri alleges no facts supporting them.  To state a claim for unconstitutional conditions of confinement, a pretrial detainee

must allege that (1) the conditions were "sufficiently serious to constitute objective deprivations of the right to due process" and (2) the prison officials "acted with at least deliberate indifference to the challenged conditions," i.e., the official's action was "objectively unreasonable." *Id.* To state an excessive force claim, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 33-34 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). Lettieri does not make any allegations about the conditions under which he was confined. *See* Docket Item 1. Nor does he allege that any Jail official used any force against him, let alone excessive force. *See id.* In other words, Lettieri makes no factual allegations even remotely supporting claims for conditions of confinement or excessive force.

Likewise, there are no facts supporting an unlawful search or seizure claim. Lettieri does not allege that either his person or cell were searched or that his person or property were seized. *See id.* And even if he had, inmates have limited privacy rights. *See McCollough v. Griffin*, 2018 WL 5298389, at *3 (S.D.N.Y. Oct. 25, 2018) ("[I]nmates do not have a cognizable interest in life, liberty, or property in the privacy of their cells." (citation omitted)); *Block v. Rutherford*, 468 U.S. 576, 590 (1984) (holding that cell searches outside presence of pretrial detainee did not violate due process under the Fourteenth Amendment); *cf. Harris v. Miller*, 818 F.3d 49, 57-63 (2d Cir. 2016) (per curiam) (reiterating that inmates "retain a *limited* right to bodily privacy under the Fourth Amendment" (emphasis added)).

Accordingly, Lettieri's cruel and unusual punishment, excessive force, and unlawful search and seizure claims are dismissed.

**III.    LEAVE TO AMEND**

Generally, a court should freely grant leave to amend a *pro se* complaint before dismissing the claims it raises.  See *Cuoco*, 222 F.3d at 112.  Nevertheless, under the unique circumstances of this case, and based on Lettieri's frivolous and vexatious filing history, the Court chooses to dismiss Lettieri's claims without prejudice rather than give him leave to amend his claims.

Lettieri has filed more than 50 civil cases and petitions in this Court, and each that has been resolved thus far has been dismissed.[4]  *See supra* at n.1.  Indeed, this Court's docket now includes 30 open cases brought by Lettieri, and the Court has closed more than a dozen of Lettieri's other cases.  Those filings have put a significant strain on court resources, and this Court will not give Lettieri another opportunity to demand more of its time and continue to "harm[] the constitutionally mandated functions of this Court."[5]  See *In re: David C. Lettieri*, Case No. 23-mc-32, Docket Item 1 at 2; *see also Uzamere v. New York*, 2019 WL 5212294, at *2 (S.D.N.Y. Oct. 15, 2019) (denying *pro se* plaintiff leave to amend because "this action is a continuation of [her] pattern of vexatious litigation").  Therefore, instead of keeping this matter open and giving Lettieri an opportunity to amend, this Court chooses to manage its docket by dismissing the case without prejudice.

---

[4] Lettieri has filed baseless notices of appeal in more than 25 of those cases.

[5] Moreover, the Court doubts that Lettieri is pursuing this action in good faith. Lettieri's assertion that Reynolds violated his rights to be free from excessive force and unreasonable search and seizure is not even remotely supported by any factual allegation, suggesting that Lettieri is simply invoking constitutional protections at random rather than attempting to formulate viable claims.

9

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that Lettieri's motion to proceed *in forma pauperis*, Docket Item 2, is GRANTED; and it is further

ORDERED that Lettieri's motion for an immediate trial, Docket Item 3, is DENIED as moot; and it is further

ORDERED that Lettieri's complaint is dismissed without prejudice and the Clerk of the Court shall close this case; and it is further

ORDERED that the Clerk of the Court shall send this order to Lettieri at the Northeast Ohio Correctional Center and the Niagara County Jail; and it is further

ORDERED that this Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals *in forma pauperis* is denied. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that Lettieri is warned that his right to pursue relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed as frivolous or malicious, for failing to state a claim upon which relief may be granted, or for seeking monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) and 1915(g); and it is further

ORDERED that if Lettieri continues filing meritless cases and motions which appear to be filed in bad faith, vexatious, wanton, or repeated for oppressive reasons,

he will be sanctioned under Federal Rule of Civil Procedure 11(c)(3), 28 U.S.C. § 1927, and the Court's inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Again, the sanctions the Lettieri potentially faces include an injunction barring the filing of any additional or new actions in this Court without first obtaining permission of the Court, dismissal of pending cases, and monetary fines.

SO ORDERED.

Dated: October 16, 2023
Buffalo, New York

           */s/ Lawrence J. Vilardo*
           LAWRENCE J. VILARDO
           UNITED STATES DISTRICT JUDGE